## Griffey v. Cornett-Lewis Coal Co.

Oct. 17, 1939.

George R. Pope for appellant.

William Sampson for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Harlan circuit court, rendered by it in favor of the appellee on its appealing from an order of the Workmen's Compensation Board, refusing to set aside and dismiss the appellant Griffey's claim for compensation for lack of jurisdiction.

We will hereinafter, for brevity, refer to appellant Griffey (the claimant below) as plaintiff and the appellee coal company as defendant.

It is shown by the record and admitted that plaintiff was very badly injured while working for defendant as a motorman upon one of its mining cars in its coal mine in Harlan County, Kentucky, on September 18, 1936.

When plaintiff entered the company's employ, it was not operating its mine under the Workmen's Compensation Act, but some six months later, or in July, 1935, the company elected to accept the Compensation Act, Kentucky Statutes, Section 4880 et seq., and began operating its mine under its provisions. The company, upon so electing, filed written notice with the Workmen's Compensation Board and also posted notices of its election at its mine commissary and "head house" and announced generally to its employees that the company was then operating the mine under the Compensation Act.

It is shown that the plaintiff when injured, was engaged in trying to effect a coupling of his motor car with a mine car at a point in the mine where there was not sufficient room, on account of the slate rock hanging low from the mine roof, between the tracks and the roof to afford plaintiff a safe place in which to operate his motor, with the result that as he "drifted" his motor to make the car coupling and was watching the signs given him by the coupler, his head was caught between the top of his car and the low slate roof and he was so seriously injured thereby as to require some four months of hospitalization and treatment, which was supplied him and paid for by the company.

It is also shown that on the following January 20, 1937, as plaintiff was about to leave the hospital, he and the defendant company entered into a settlement agreement, by which, for an agreed consideration of some $260, plaintiff executed defendant a full discharge and release from all claims for damages arising from this accidental injury and re-entered the company's employ at his old position of motorman at his former rate of wages.

Griffey, notwithstanding his having made such settlement of his claim, on September 15, 1937, filed his application for adjustment of his disability claim, growing out of this accident, with the Compensation Board. The defendant contested this claim made, denying plaintiff was entitled to an award of compensation by it on the two grounds that a full common law settlement had been made with plaintiff of the claim and that the Compensation Board was without jurisdiction to hear the claim or to make any compensation award, for the reason that plaintiff had never elected, during his employment with defendant, to accept the benefits of the Workmen's Compensation Act and had never signed its compensation register.

The evidence heard by the Board upon these questions conceded the fact that plaintiff had never elected to work for defendant under the provisions of the Compensation Act and had never signed its compensation register.

Mr. Lawson, the manager of the defendant company, when testifying before the Board, admitted that plaintiff had been badly injured while working in the company's mine as a motorman, but further testified

that he had never elected to work for it under the Compensation Act and that after some four months of hospitalization and treatment of his injuries, furnished him by the company, it had entered into a settlement agreement with him, whereby the defendant was fully discharged and released from all claims, of whatever character, arising out of his accidental injury when employed by the company. Further, he stated that the agreed consideration of $260 was paid the plaintiff therefor by two checks given him in the respective amounts of $230 and $30. Further, he explained the words "Compensation Fund" appearing printed on the checks as being due to the fact that his company kept two accounts in the bank, one a general account and the other an account for paying all the employees' claims for compensation; that the company had had these checks for more than twelve years and that they had never been changed since an earlier period when the company had for awhile worked under the Compensation Act; that when they stopped operating thereunder, they had kept the same checks to pay all claims arising out of injuries received by their employees at the mine; and that the checks were used to keep the account separate from the mine's general account. Further, he testified that plaintiff could not have been led to believe from this wording upon the checks that he was being paid the $260, provided for in his settlement agreement with the defendant, as compensation owing for his injuries under the Compensation Act, for the very sufficient reason that he had executed his common law settlement with the defendant before he ever saw the checks and for the further reason, which is conceded, that plaintiff had never elected to work for defendant under the provisions of the Compensation Act and had never signed its compensation register, as required for evidencing such election.

The testimony of plaintiff before the Board, given in support of his claim there made for compensation and in support of its jurisdiction to hear and award him the same, is as follows:

"Q. Tell the Board whether or not when you got the job there or at any time after you got the job you signed the compensation ledger to work under the Compensation Act? A. Well, no. I don't remember signing the ledger but they had notices up there at the commissary and at the head house

that they had accepted the compensation one hundred per cent. * * *

"Q. Tell the Board whether or not as a result of this injury they have ever paid you any compensation? A. They paid me $260.00, they paid it two different ways, give a check for $230.00 and then they give a check for $30.00 and kept it on the account what I lacked being even in the office.

"Q. Was that compensation? A. I reckon.

"Q. What did they say it was? A. Said compensation on the check.

"Q. Who told you that? A. Mr. Lawson, * * * compensation for the disability."

On cross-examination plaintiff testified as follows:

"Q. I believe you told the Board the Company settled with you, paid you $230.00 in addition to the medical treatment? A. Yes. * * *

"Q. Did I understand you to say you didn't sign any compensation register or anything else that had to do with the compensation when you went to work? A. When I began to work they wasn't carrying the compensation at that time, and about sometime, I don't remember how long after, they posted notices on the commissary porch and up at the head house that they had accepted the compensation one hundred per cent.

"Q. Were you at the meeting when it was announced that the Company had accepted the Compensation Act? A. Can't remember.

"Q. After they posted notices, did you ever go to the office and sign up on any compensation register? A. No.

"Q. Did you go to the office and ask to be permitted to sign? A. No.

"Q. When they paid you what they did pay you, why do you call it a compensation check? A. It had the Compensation Board at Frankfort on the check, printed there. I deposited it in the First National Bank. I guess they have the receipt for it there now.

"Q. What you know about the check is the information you got from reading the check? A. Yes,

and Uncle Bob told me when he give it to me, I didn't want to take it for a long time, he said that is what compensation is for, to pay men for their disability. I wouldn't have accepted that little dab for such an injury but I was working there and you know as well as I do that when a man sues a Company he is through working for them and I didn't have any show to get out and get a job. I had been out of a job and I didn't have no show whatever.

"Q. You did settle with the Company for $230.00? A. I took the check.

"Q. You signed up with them for the settlement? A. Yes.

"Q. When you did sign, you understood that it was a settlement for the injury? A. In a way, I didn't know whether I would get any more or not, I knowed I was due a lot more.

"Q. Even though you thought you were due more, you did sign and settle with them? A. I signed the check.

"Q. Did you sign a receipt with the check? A. Yes, I was in the condition I had to."

Upon this proof, the Board held that by reason of the settlement entered into on January 20, 1937, between the plaintiff and defendant, the defendant was estopped "from denying that the plaintiff is under the Act" and further ordered that the parties proceed with the taking of proof as to the extent and duration of plaintiff's injury.

Upon appeal from this ruling of the Harlan circuit court, it overruled Griffey's special demurrer to the court's jurisdiction, upon grounds recited in the judgment, which are as follows:

"The evidence before the Board, all of which was introduced by the defendant, Arthur Griffey, shows conclusively and without contradiction that though the Cornett-Lewis Coal Company, the employer, had accepted the Act and had posted notices of such acceptance, yet the defendant, Arthur Griffey, the employee had not accepted the Act as provided by the Kentucky Workmen's Compensation Law. The evidence not only shows said fact without contradiction but also shows without contradic-

tion that nothing was done by the parties which would place or could place them under the provisions of the act or within the jurisdiction of the Kentucky Workmen's Compensation Board. The settlement made between said parties was a common law settlement and had no reference to the provisions of the Kentucky Workmen's Compensation Act. The record presents no issue of fact, there being no contradiction in the evidence but does present purely a question of law. The board was without jurisdiction and it was its duty to have refused to take jurisdiction and to have dismissed this case upon the motion of the Cornett-Lewis Coal Company to dismiss for lack of jurisdiction.

"To allow this case to proceed further before the Board under the record would simply mean an expense to the parties, a burden to the Board and to the Commonwealth of Kentucky in the taking of further proof with regard to the extent and duration of Griffey's injuries and after that would then result conclusively in the dismissal of the claim before the Board for lack of jurisdiction."

Wherefore, the court adjudged that the coal company's appeal was well taken; "that the order of the Board herein holding that the Board had jurisdiction is erroneous, contrary to law and illegal and that same be and it is hereby set aside and held for naught; that this case be and the same is hereby remanded to the Board and the Board is hereby ordered and directed to enter an order herein setting aside its said order rendered by it herein and to dismiss the claim of the defendant, Arthur Griffey, herein."

To this ruling and judgment Griffey objected and excepted and prayed an appeal to this court, which was granted and is here prosecuted.

We have carefully considered the several questions here presented and are of the opinion that the learned trial court's ruling was altogether proper and in full harmony with the like holding made by us in the recent case of McClary v. McClary, 274 Ky. 299, 118 S. W. (2d) 687.

In that case, as here, the injured employee, who sought to recover workmen's compensation, had failed to sign the compensation register. There it was said, in substance, that neither the employer nor employee is

subject to the Compensation Act until they voluntarily accept it, and it is this fact that renders the act constitutional, Section 4957, Kentucky Statutes, and, further, that where an employee, under the belief that he is subject to the provisions of the Compensation Act, is led to act to his detriment by his employer, the employer is estopped to deny that employee accepted the provisions of the compensation statute in writing, as required.

But the evidence in this case clearly shows that no such situation is here presented, which brings the case clearly within the rule therein announced and applied, which is that where an employee concededly did not sign the compensation register, accepting the provisions of the Act, and it is not shown that the employee, under the belief that he was under the Act, was led to act to his detriment by his employer, the employer is not estopped to deny that the employee signed the compensation register in compliance with the statute; or, in other words, that such rule as provided by the statute applies where there is no element of estoppel present and that in such case the failure of the employee to sign the compensation register precludes him from claiming under the Compensation Act.

Such being the situation here presented and the appellant's evidence tending to show no element of estoppel of the employer to plead plaintiff was not working under the provisions of the Compensation Act when injured, we, without hesitation, conclude that the trial court's judgment was correct, in holding that the Compensation Board was without jurisdiction to hear plaintiff's claim and in remanding the case back to the Board, with the direction that the Board set aside its order rendered and dismiss Griffey's claim.

Judgment affirmed.